```
                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEBRASKA

UNITED INDOOR FOOTBALL        )
ASSOCIATION,                  )
                              )
            Plaintiff,        )            8:04CV592
                              )
      v.                      )
                              )
NATIONAL INDOOR FOOTBALL      )         MEMORANDUM AND ORDER
LEAGUE,                       )
                              )
            Defendant.        )
                              )
```

The plaintiff's Second Motion to Compel, filing 47, requests a court order requiring the defendant National Indoor Football League ("NIFL") to provide full and complete responses to the First and Second Requests for Production of Documents and First and Second Set of Interrogatories served by the plaintiff United Indoor Football Association ("UIFA"). As described in its brief, the plaintiff requests an order compelling an answer to Interrogatory 3 of the plaintiff's first set of interrogatories (filing 49, ex. F), responses to Requests 4, 5, 6, 7, and 8 of its first set of requests for production of documents (filing 49, ex. E), response to Requests 4, 5, 10, 11, 12, 13, 14, 15, and 18 of its second set of requests for production of documents, (filing 49, ex. G), and answers to Interrogatories 1, 3, 12, 16, 18, and 20 of the plaintiff's second set of interrogatories (filing 49, ex. H). The plaintiff also moves to compel the production of documents identified by Carolyn Shiver during her deposition.

The plaintiff's complaint alleges UIFA is a Nebraska citizen; NIFL is an Ohio limited liability company; the amount in controversy exceeds seventy-five thousand dollars; and federal subject matter jurisdiction exists on the basis of diversity, 28

U.S.C. § 1332.  The defendant has filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Filing 15.  The defendant claims it is a limited liability company; the citizenship of a limited liability company is defined by the citizenship of its members; two of its members, Lincoln Football, LLC and Game Over, Inc., are Nebraska citizens; and therefore complete diversity is lacking and this court has no subject matter jurisdiction.

After the motion to dismiss was filed, the plaintiff promptly requested leave to conduct discovery "directed to issues bearing on the jurisdictional issue raised in NIFL's Motion to Dismiss."  Filing 19 ¶ 8.  UIFA's motion specified that it was requesting discovery of the following:

> (1) the existence and identity of NIFL's members;
>
> (2) the manner in which NIFL has treated its teams in the past for purposes of taxation;
>
> (3) organizational or other corporate documents (such as an operating agreement) of NIFL identifying its purported members or otherwise relating to this issue;
>
> (4) NIFL's records of distributions to its purported members;
>
> (5) copies of communications between the NIFL and its purported members or third parties; and
>
> (6) any other information relating to "membership" in the NIFL.

Id.  NIFL did not oppose the plaintiff's motion, and the court granted the motion "to permit jurisdictional discovery," (filing 20 ¶ a) and set an April 1, 2005 deadline for completing "any

jurisdictional discovery herein."[1]  Filing 20 ¶ b.  The plaintiff's second set of interrogatories and production requests were promptly served thereafter on February 9, 2005.  Filing 21.

Where a party or the court questions the court's subject matter jurisdiction over a case, the court may limit discovery to that issue.  "It is a recognized and appropriate procedure for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters."  <u>United States Catholic Conference v. Abortion Rights Mobilization, Inc.</u>, 487 U.S. 72, 79-80 (1988).  See also <u>Enplanar, Inc. v. Marsh</u>, 11 F.3d 1284 (5th Cir. 1994) (court did not abuse its discretion in denying merits-related discovery pending ruling non a motion for change of venue); <u>River Plate Corp. v. Forestal Land, Timber & Ry. Co.</u>, 185 F. Supp. 832 (D.C.N.Y. 1960)(where a motion to quash service of summons was pending, discovery was appropriately limited to the issue of jurisdiction).

When the court has limited discovery to the issue of jurisdiction, until the plaintiff has shown a reasonable basis for assuming jurisdiction, the plaintiff is not entitled to any other discovery.  <u>Filus v. Lot Polish Airlines</u>, 907 F.2d 1328, 1332 (2d Cir. 1990)(citing <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 n. 13 (1978)).

> Inasmuch as a dispositive motion is pending, the Court concludes that allowing discovery which extends beyond jurisdictional issues at this juncture would place a burden upon Defendant which far exceeds any benefit

---

[1] This deadline was extended to June 27, 2005.  See filings 40 and 41.

3

>	Plaintiff would derive.  Should Defendant prevail on
>	its motion to dismiss, any effort expended in
>	responding to merits-related discovery would prove to
>	be a waste of both parties' time and resources.  Should
>	Defendant's motion be denied, however, Plaintiff will
>	still have ample time and opportunity to conduct
>	discovery on the merits.

Orchid Biosciences, Inc. v. St. Louis University, 198 F.R.D. 670, 675 (S.D. Cal. 2001).  So limiting discovery in this case is both appropriate and consistent with the court's intent in granting the plaintiff's motion to permit discovery "directed to issues bearing on the jurisdictional issue raised in NIFL's Motion to Dismiss."  Filing 19 ¶ 8.

Accordingly, in evaluating plaintiff's pending motion to compel, only those discovery requests which may lead to information on the issue of subject matter jurisdiction are considered relevant at this time.  The plaintiff argues the court should not restrict the discovery to jurisdictional issues because, during discussions to resolve the discovery disputes, the defendant stated other grounds but never refused to provide discovery responses because they exceeded the scope of jurisdictional discovery.  The plaintiff has submitted no evidence to that effect and the defendant's objections of record repeatedly raise a relevancy objection to discovery unrelated to proving subject matter jurisdiction.  Moreover, with or without the consent of the parties, this court has the sua sponte authority to determine its jurisdiction before entering any orders related to litigating the merits of a case.  See Williams v. Rogers, 449 F.2d 513, 517-18 (8th Cir. 1971).

As established in my June 13, 2005 order, filing 56, if defendant's motion to dismiss is denied, a scheduling conference

4

will promptly be held and a new scheduling order entered.  This scheduling order will include provisions that afford the plaintiff an opportunity to conduct discovery on the substantive issues of this case.  Until then, the issue before the court, and the relevant issue for discovery, is whether this court has subject matter jurisdiction.

The federal court's diversity jurisdiction in a suit against an unincorporated entity depends on the citizenship of the members of that entity.  GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc., 357 F.3d 827, 828 (8th Cir. 2004)(citing Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990)(quoting Chapman v. Barney, 129 U.S. 677, 681 (1889)).  As applied to this case and the plaintiff's second motion to compel, the pending issues are whether NIFL is a limited liability company (or other unincorporated entity), whether Lincoln Football, LLC and Game Over, Inc. are members of NIFL, and whether Lincoln Football, LLC and Game Over, Inc. are Nebraska citizens.

1. <u>Interrogatory 3 the Plaintiff's First Set of Interrogatories (Filing 49, Ex. F): Requests 4, 5, 6, 7, and 8 of its First Set of Requests for Production of Documents (Filing 49, Ex. E)</u>.

The plaintiff's first set of interrogatories and production requests were served immediately after the defendant filed its motion to dismiss and before the court entered an order permitting jurisdictional discovery.  See filing 17.  As to the first set of interrogatories, only Interrogatory 3 is discussed in the plaintiff's brief.  Interrogatory 3 requested the identity of any lawsuit to which the defendant was a party, the date the suit was filed, the name and location of the court's record, and the name of the adverse party.  The defendant objected to the

interrogatory, but excluding such information related to worker's compensation lawsuits, answered the interrogatory fully as to five lawsuits, acknowledged that a sixth suit was pending in Ohio, and stated it would provide detailed information concerning that suit at a later time.  Filing 49, ex. F.

The plaintiff's pending motion to compel claims the information on the Ohio suit is "clearly discoverable because NIFL could have made representations in the Ohio lawsuit about its residency and/or citizenship, and UIFA is entitled to examine such representations to determine whether they are consistent with NIFL's position in the present case."  While true, this argument certainly expands the common sense parameters of "jurisdictional discovery" to its outer limits (and perhaps beyond).[2]  Nonetheless, after the motion to compel was filed, NIFL supplemented its response to Interrogatory 3 by adding a case entitled Ohio Valley Football, LLC et. al. v. NIFL and Main Street Bank (presumably a case filed in 2005 since its Civil Action Number is 05-C-71), providing the specific information for the previously identified "Ohio case," and explaining that this case involved several issues concerning Ohio but was actually filed in a Pennsylvania federal court in 2002.  Filing 54, ex. K.

---

[2]As to relevancy, I also question whether the defendant's statement of citizenship in a 2002 Pennsylvania federal case can be considered an "admission" or "statement against interest" in a 2005 Nebraska federal case.  An admission concerning citizenship implies knowing the then-existing and relevant law.  The law concerning citizenship of limited liability companies for the purposes of establishing diversity has evolved since 2002.  The citizenship analysis for limited liability companies as set forth in GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc., 357 F.3d 827, 828 (8th Cir. 2004) was a matter of first impression for the Eighth Circuit in 2004.  Based on my cursory review, the issue has yet to be addressed in the Third Circuit.

6

Based on this record, I find no evidence that NIFL was dilatory, evasive, or unwilling to respond to Interrogatory 3 of plaintiff's first set of interrogatories. The existence of the "Ohio case" was not hidden, and it is likely the details of that case were not immediately disclosed because the defendant had a limited recollection of the case and a mistaken belief as to where it was filed. I conclude that NIFL has adequately responded to UIFA's first set of interrogatories and plaintiff's motion to compel concerning this discovery will be denied.

The plaintiff has moved to compel responses to requests four through eight of plaintiff's first set of requests for production of documents. Request 4 asks for copies of team participation agreements or other contracts between the NIFL and any team or entity. The defendant states all such documents located were either disclosed with defendant's initial disclosures or through its supplemental responses to Request 4 (see filing 54, ex. L, (Rapid City Red Dogs and Tri-City Diesel participation agreements)). During her deposition, Carolyn Shiver, who formed the NIFL, identified Omaha Beef, Ohio Valley, Sioux City, Sioux Falls, Dayton, Evansville, Indiana, Lexington, Black Hills, and Tupelo participation agreements. Filing 49, ex. I (Shiver deposition) at 51, 72, 95-97, 99, 102-106, & 11-113). Shiver also agreed to produce a version of the Sioux City team participation agreement signed by the NIFL; the copy available at her deposition lacked NIFL signatures. Filing 49, ex. I (Shiver deposition) at 105:24-106:13. The defendant's brief states Shiver has been unable to find a fully executed Sioux City team participation agreement but if she does, she will forward a copy to UIFA.

7

Irrespective of whether the plaintiff believes the defendant's claim that all responsive documents have been disclosed, I cannot discern how team participation agreements, whether executed or not, tend to prove or disprove the pending jurisdictional issue, and the plaintiff has not argued that such information is needed to prove jurisdiction.  The plaintiff claims that "[t]o the extent that certain agreements include different language relating to a team's right to withdraw from the league, UIFA should be aware of such differences for consideration of the substantive issues in this case."  Filing 48 (plaintiff's brief) at 2.  Since at this time I am limiting discovery to the jurisdictional issue, I shall deny the plaintiff's motion at it relates to:  1) Request 4 of plaintiff's first set of requests for production of documents, and 2) Shiver's production of a signed copy of the Sioux City team participation agreement.

For similar reasons, I shall deny plaintiff's motion to compel responses to Requests 5, 6, 7, and 8 of the plaintiff's first set of requests for production of documents.  Request 5 seeks communications relating or referring to the withdrawal, termination, resignation, or cancellation of any team from the NIFL.  Request 6 asks for all NIFL schedules from the time of NIFL formation to the present.  Request 7 seeks documents reflecting when the draft or final schedule for the 2005 NIFL season was prepared.  Request 8 seeks documents reflecting contracts and communications to secure arenas of facilities to play the NIFL games for the 2004-05 season.  The plaintiff claims such documents are relevant to prove whether the NIFL's current withdrawal requirements are consistent with its past practices and interpretation of the participation agreements, and whether the NIFL can validly assert that such notices were tendered too

late because the 2005 schedule and venues were already set.  The documents responsive to Requests 5, 6, 7, and 8 of the plaintiff's first set of requests for production of documents address the substantive merits of this case, not the jurisdictional issues.  The NIFL's membership when the complaint was filed is relevant, but past team withdrawals, the requirements for such withdrawals, and the past, current, and proposed football schedules are not relevant to the motion to dismiss.

> 2.  <u>Requests 4, 5, 10, 11, 12, 13, 14, 15, and 18 of Plaintiff's Second Set of Requests for Production of Documents, (filing 49, ex. G), and Interrogatories 1, 3, 12, 16, 18, and 20 (filing 49, ex. H) of Plaintiff's Second Set of Interrogatories (filing 49, ex. H)</u>.

Several of plaintiff's discovery requests in its second set of interrogatories and requests for production focus on obtaining detailed financial information of NIFL and its members.  Request 4 asks the NIFL to produce all communications between NIFL and Game Over, Inc., or its shareholders, officers, directors, or employees.  NIFL claims it has produced all copies of such communications "other than accounting information."  Filing 49, ex. G.  UIFA contends this "accounting information" is relevant to proving whether Game Over, Inc. and Lincoln Football, L.L.C. are truly "members" of NIFL's limited liability company.

Assuming NIFL has produced all other responsive documents, the question with respect to Request 4 is whether it must also provide its accounting information to UIFA.  This information would presumably include internal bookkeeping records, ledgers, and working papers reflecting NIFL's expenditures, income, profits, and member distributions.  In addition to the

"accounting information" encompassed by Request 4, UIFA has requested all financial records and statements of the NIFL, including its bank statements and balance sheets for itself and its members (Request 11): audits, compilations, or other reports regarding NIFL, whether prepared internally or by an accountant (Request 12); documents reflecting loans made by NIFL to its members, managers, officers, employees or the affiliates of NIFL (Request 13); documents reflecting the federal, state, and local tax elections made by NIFL (Request 14); copies of all federal and state income tax returns filed on its behalf, as well as any IRS Form 1065s and K-1s for its individual members (Request 18); the allocation and itemization of capital gains and losses, charitable contributions, dividends, and foreign taxes reported to any taxing authority by NIFL, as well as the allocation of among the members of NIFL (Interrogatory 12); a listing of all bank accounts held by NIFL, including the account numbers and name of the bank (Interrogatory 18); and the annual allocations of profits and losses, and corresponding adjustments to capital accounts, to members (Interrogatory 20).

    The plaintiff contends this detailed financial information is required to determine if NIFL operates as a limited liability company with Game Over, Inc. and Lincoln Football, L.L.C. as members.  NIFL maintains that it has already produced the K-1s distributed to Lincoln Football, LLC and Game Over, Inc.; no audits have been performed and therefore no such documents can be produced; and requests for financial information reflecting the private financial information of NIFL or its non-Nebraska members (including K-1s, tax returns, tax elections, bank statements, loan documents, and internal accounting information) are overbroad and exceed the scope of any discovery relevant to determining subject matter jurisdiction.  NIFL further argues

that UIFA should not be allowed to perform a detailed accounting of its finances and business transactions under the auspices of jurisdictional discovery because the issue of jurisdiction does not depend on whether NIFL correctly operates as a Ohio limited liability company, but whether it is an unincorporated association with Nebraska members.

The plaintiff's discovery requests for financial information of not only NIFL, Game Over, Inc., and Lincoln Football, L.L.C. , but also its non-Nebraska "members," are overbroad. This finding applies to Requests 11, 13, and 18, and Interrogatories 12 and 20. The financial information of non-Nebraska NIFL "members" will not serve to prove or disprove whether Game Over, Inc. and Lincoln Football, L.L.C. are "members" of NIFL, and an unwarranted release of such information violates the interest of the non-parties in maintaining their financial privacy.

As to the financial records of NIFL, Game Over, Inc., and Lincoln Football, L.L.C., the extent of information sought exceeds the bounds of what is relevant or necessary to respond to the jurisdictional challenge raised by the defendant. While such documents may contain some information germane to proving NIFL's status as an unincorporated association or the "membership" of Game Over, Inc. and Lincoln Football, L.L.C. in the NIFL, there is no showing that this level of detailed inquiry is warranted to provide a complete record for court consideration on the jurisdictional issue. Even when discovery requests may "touch on" relevant information, the court is authorized to limit discovery when the extent of its reach exceeds the reasonable boundaries of the issue at hand.

> A district court's control over discovery has been
> enhanced since the changes in the Federal Rules of

11

> Civil Procedure in 2000. The Rules were amended "to involve the court more actively in regulating the breadth of sweeping or contentious discovery." In particular, the new rules limit the breadth of discovery that can occur absent court approval. Under Rule 26(b)(1), for example, discovery must relate more directly to a "claim or defense" than it did previously. . . .

<u>Sallis v. University of Minn</u>., 408 F.3d 470, 477-78 (8th Cir. 2005)(quoting Fed. R. Civ. P. 26 advisory committee's notes). Upon a party's objection that discovery served goes beyond material relevant to the pending claims or defenses, the court is obligated to evaluate the parties' respective claims and strike a discovery balance that preserves the adversary litigation process while assuring the process itself does not inflict unnecessary harm.

The plaintiff's complaint alleges that "NIFL is an Ohio limited liability company with its principal place of business in Lafayette, Louisiana." Filing 1, ¶ 4. Once faced with the prospect that NIFL may have Nebraska members and therefore jurisdiction may be lacking, UIFA did not focus its discovery on proving that NIFL was actually an Ohio corporation (with Ohio citizenship), but on obtaining NIFL's financial information to ascertain whether and to what extent it operates as a limited liability company (as opposed to a partnership or some other unincorporated association).

The form of the defendant as an entity, however, is not the determinative issue. So long as it is an unincorporated association, it is a citizen of any state where its members are citizens. <u>GMAC</u>, 357 F.3d at 828. NIFL distributed K-1s to its Nebraska "members," and these K-1s were already provided to UIFA. K-1s incorporate and summarize much of the information reflected

in the detailed financial information requested by the plaintiff's Requests 4, 11, 12, and 13, and Interrogatories 12, 18, and 20. Having received the K-1s, as it pertains to proving citizenship, UIFA will gain little if any useful information from the financial documents used to create them. The plaintiff has failed to show how the "federal, state and local entity tax elections made by NIFL," (see Request 14) are relevant, and to the extent Request 18 seeks relevant K-I information, the defendant has complied.

The plaintiff's motion to compel responses to Request 4, 11, 12, 13, 14, and 18 of its second set of requests for production, and Interrogatory 12, 18, and 20 of its second set of interrogatories will be denied.

The plaintiff's discovery requests also encompass NIFL sales and acquisition information including a request for franchise offerings, circulars, disclosure documents and sales and marketing information provided by NIFL in connection with the solicitation for sale of the NIFL playing system to members or potential members of NIFL (Request 15); the identity of all states in which NIFL has sold or offered for sale securities and membership interests in NIFL and the identity of any entity to which such sale or offer was made (Interrogatory 1); the identity of any exemptions from registration that NIFL claims apply to its offer or sale of securities or membership interests in each state where it has sold or offered for sale securities or membership interests in NIFL (Interrogatory 3); and a listing of any restrictions on the transfer or assignment of equity interests in NIFL (Interrogatory 16). The plaintiff argues that such information can prove whether NIFL ignored the legal requirements ordinarily placed upon limited liability companies and assist in

determining whether certain teams were truly members of the limited liability company when this case was filed.

As argued by the defendant, Request 15 and Interrogatory 1 are overbroad--these requests for sales and purchase information are unlimited as to time (and specifically the time frame when this suit was filed and thereafter), the current listing of NIFL members, or the Game Over, Inc. and Lincoln Football, L.L.C. purchase of membership interests.  The defendant also objects to Request 15 and Interrogatories 1, 3, and 16 as wholly irrelevant to the issue of whether Game Over, Inc. and Lincoln Football, L.L.C. are members of a limited liability company and citizens of Nebraska.  The defendant argues:

> NIFL is not a corporation and will therefore be treated as a citizen of every state where its members are citizens, regardless of whether it followed legal requirements for limited liability companies or is simply deemed a partnership. NIFL has stated and shown that Lincoln Football, LLC and Game Over, Inc. are the Nebraska members of NIFL, which nullifies diversity jurisdiction with the Nebraska corporation UIFA. The membership of other teams who became members or were offered membership to NIFL is irrelevant to the restricted issue of diversity jurisdiction because diversity has already been defeated by the membership of Lincoln Football, LLC and Game Over, Inc. in NIFL.

I agree with the defendant.  For the purpose of determining subject matter jurisdiction, sales and marketing information distributed by NIFL (Request 15); geographical information regarding sales of securities and membership interests in NIFL (Interrogatory 1); registration exemptions claimed by NIFL for the sale of securities or membership interests (Interrogatory 3); and the restrictions on transfer or assignment of equity interests in NIFL (Interrogatory 16) are irrelevant.  The

plaintiff's motion to compel responses to Request 15 of its second set of requests for production, and Interrogatory 1, 3, and 16 of its second set of interrogatories will be denied.

The plaintiff has also moved to compel responses to Requests 5 and 10 of its second set of requests for production of documents.  Request 5 seeks all documents relating to the membership of Lincoln Football, L.L.C. in NIFL.  Request 10 seeks communications between NIFL and its managers or members regarding the management or operation of NIFL.  NIFL has provided a listing of all league members and the date when each team became a "member," documents responsive to Request 5 were already provided to the plaintiff in response to the subpoena served on Lincoln Football, LLC, and e-mail correspondence previously disclosed concerning the members of the UIFA was responsive to Request 10. NIFL states it has provided all documents it can locate that are responsive to Request 5, and it objects to Request 10 as overly broad, unduly burdensome and irrelevant to determining the citizenship of those with membership interests in the NIFL.

I agree that Request 10 is overbroad.  However, during her deposition, Carolyn Shiver agreed to produce certain documents within the scope of Request 10.  Specifically, Ms. Shiver acknowledged that a document exists which lists the persons who were present at the fall 2004 NIFL league meeting, (filing 49, ex. I (Shiver deposition) at 43:20-44:4); approved minutes from this league meeting, (filing 49, ex. I (Shiver deposition) at 61:11-20); operating agreement Exhibits A and B (exhibit B containing signatures of all NIFL teams), (filing 49, ex. I (Shiver deposition) at 109-110); and transmittal letters evidencing that the Defendant sent the operating agreement to its "members," (filing 49, ex. I (Shiver deposition) at

15

228:19-229:4). Although Shiver's deposition occurred on March 13, 2005, defendant's June 3, 2005 brief states the documents have not been produced because Shiver has been unable to find them.

I shall therefore order Carolyn Shiver to either produce the documents outlined in the foregoing paragraph on or before July 20, 2005, with a filed affidavit statement indicating that they have been produced, or file an affidavit explaining her efforts to locate the documents along with an explanation as to why these documents may no longer exist, cannot be found, or have not been produced. I shall also require Shiver to provide an affidavit indicating that all documents she can locate reflecting communications between NIFL and Game Over, Inc., or its shareholders, officers, directors, or employees (Request 4); and all documents relating to the membership of Lincoln Football, L.L.C. in NIFL (Request 5) have been produced.

IT THEREFORE HEREBY IS ORDERED: The plaintiff's filing 47 motion to compel is granted in part and denied in part as follows:

1. Plaintiff's motion to compel an answer to Interrogatory 3 of the plaintiff's first set of interrogatories (filing 49, ex. F), is denied.

2. Plaintiff's motion to compel responses to Requests 4, 5, 6, 7, and 8 of its first set of requests for production of documents (filing 49, ex. E), is denied.

3. Plaintiff's motion to compel answers to Interrogatories 1, 3, 12, 16, 18, and 20 of the plaintiff's second set of interrogatories (filing 49, ex. H), is denied.

4. Regarding plaintiff's motion to compel responses to its second set of requests for production of documents, (filing 49, ex. G):

16

      a.   As to Requests 10, 11, 12, 13, 14, 15, and 18, the motion is denied.

      b.   As to Request 4, on or before July 20, 2005, Carolyn Shiver shall file an affidavit indicating that all documents she can locate reflecting communications between NIFL and Game Over, Inc., or its shareholders, officers, directors, or employees have been produced. In all other respects, plaintiff's motion to compel a response to Request 4 of its second set of requests for production of documents is denied.

      c.   As to Request 5, on or before July 20, 2005, Carolyn Shiver shall file an affidavit indicating that all documents she can locate relating to the membership of Lincoln Football, L.L.C. in NIFL have been produced.

5. Regarding the plaintiff's motion to compel Carolyn Shiver to produce:

   (a)   the list of persons who were present at the fall 2004 NIFL league meeting as identified in her deposition at 43:20-44:4;

   (b)   the approved minutes from this league meeting as identified in her deposition at 61:11-20;

   (c)   the operating agreement exhibits A and B identified and discussed in her deposition at 109:11-110:3 and 281:20-22; and

   (d)   the transmittal letters evidencing that the NIFL sent the operating agreement to its members as identified in her deposition at 228:19-229:4;

on or before July 20, 2005, Carolyn Shiver shall produce these documents and file an affidavit statement indicating that the documents have been produced, or if any such document(s) has not been produced, file an affidavit explaining her efforts to locate the document(s) along with an explanation as to why the document(s) may no longer exist, cannot be found, or has not been produced.

6. The plaintiff's motion to compel Carolyn Shiver to produce a signed copy of the Sioux City team

participation agreement identified in her deposition at 105:24-106:13, is denied.

DATED this 5th Day of July, 2005.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge